IN THE CHANCERY COURT OF RUTHERFORD COUNTY, TENNESSEE

FOR THE SIXTEENTH JUDICIAL DISTRICT AT MURFREESBORO

| | | |
|---|---|---|
| ADVANTAGE WAYPOINT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| MICHAEL BAKER, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Plaintiff Advantage Waypoint, LLC ("Advantage Waypoint"), moves the court pursuant to Tennessee Rule of Civil Procedure 65.03 for the entry of a temporary restraining order enjoining Defendant Michael Baker ("Baker") from continuing to breach his January 3, 2014 Employee Restrictions and Proprietary Information Agreement. In support of its motion, Plaintiff files the accompanying Verified Complaint and Exhibit, including the January 3, 2014 Employee Restrictions and Proprietary Information Agreement that contains the noncompetition and nonsolicitation obligations which form the basis of this motion.

Plaintiff also submits its Memorandum in Support of Motion for Temporary Restraining Order and Temporary Injunction. Plaintiff avers as follows:

1.    Advantage Waypoint seeks a Temporary Restraining Order to enjoin Baker from soliciting Advantage Waypoint's clients and customers in violation of the non-solicitation clause in his January 3, 2014 Employee Restrictions and Proprietary Information Agreement.

1

EXHIBIT
2

2. Following a hearing, Advantage Waypoint seeks a Temporary Injunction prohibiting Baker from violating all of the restrictive covenants in his January 3, 2014 Employee Restrictions and Proprietary Information Agreement, including its nondisclosure clause, noncompetition clause and nonsolicitation clauses pertaining to, *inter alia*, clients, customers and employees.

3. Advantage Waypoint will suffer immediate and irreparable harm if Baker is not prohibited from violating his restrictive covenants while working for his new employer, and Advantage Waypoint's direct competitor, The Core Group, Inc. ("Core"), as set forth in the Verified Complaint and Memorandum of Law filed contemporaneously herewith;

4. Advantage Waypoint is likely to prevail on the merits of its breach of contract claims based upon Baker's conduct as asserted in the contemporaneously filed documents.

5. Public policy considerations require this Court's immediate action to prevent Baker's continued violations of his January 3, 2014 Employee Restrictions and Proprietary Information Agreement. Such unlawful activity could have devastating effects on Advantage Waypoint as well as public confidence in the integrity of contractual documents.

6. In balancing the equities, granting the present motion will do Baker little harm relative to the substantial and irreparable harm that will be done to Advantage Waypoint if the motion is denied.

Baker's conduct compels Advantage Waypoint to request relief in the form of a Temporary Restraining Order and, after a hearing, a Temporary Injunction. The relief sought herein is reasonable. It simply seeks to prevent Baker from unfairly competing with Advantage Waypoint by soliciting Advantage Waypoint's clients and customers until a hearing for a temporary injunction can be held, at which time Advantage Waypoint will seek to compel Baker

to adhere to all terms of the January 3, 2014 Employee Restrictions and Proprietary Information Agreement, to include: for a period of 18 months, discontinuing his work for Core, and refraining from soliciting Advantage Waypoint's clients, prospective clients, and employees. Advantage Waypoint also seeks to enjoin Baker from using or disclosing any of Advantage Waypoint's confidential information or trade secrets. The relief requested will not impose any undue burden or harm on Baker. Instead, it will simply require Baker to honor the obligations to which he knowingly and voluntarily agreed in exchange for good and valuable consideration.

Advantage Waypoint also requests that the Court set a date for a hearing for a Temporary Injunction to address the proper continuation of injunctive relief until a trial can be held on its claims.

Pursuant to rule 65.05, Advantage Waypoint shall give a bond with surety in such sum as the Court may deem appropriate for the payment of such costs and damages as may be incurred or suffered by any person who is found to be wrongly restrained or enjoined.

Dated this 14th day of July, 2017.

Respectfully submitted,

William S. Rutchow (BPR #017183)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, Tennessee 37219
(615) 254-1900
(615) 254-1908 (*Facsimile*)

**ATTORNEYS FOR PLAINTIFF
ADVANTAGE WAYPOINT LLC**

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th of July 2017 a true and correct copy of the foregoing was served upon the following:

Michael Baker
2412 Delano Ct
Murfreesboro, TN 37130
4thbakerboy@att.com
4thbakerboy@att.net

*via hand delivery/email.*

IN THE CHANCERY COURT OF RUTHERFORD COUNTY, TENNESSEE

FOR THE SIXTEENTH JUDICIAL DISTRICT AT MURFREESBORO

ADVANTAGE WAYPOINT LLC,    )
    )
Plaintiff,    )
    )
v.    )    Civil Action No.
    )
MICHAEL BAKER,    )
    )
Defendant.    )

## MEMORANDUM IN SUPPORT OF MOTION FOR
## TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Advantage Waypoint LLC ("Advantage Waypoint") seeks to enforce reasonable restrictive covenants against its former executive Defendant Michael Baker ("Baker") in order to prevent further harm related to his unlawful conduct. Specifically, as set forth in its motion, Advantage Waypoint seeks the following emergency relief:

1. A Temporary Restraining Order prohibiting Baker from soliciting Advantage Waypoint's clients and customers in violation of the nonsolicitation clause in his January 3, 2014 Employee Restrictions and Proprietary Information Agreement;

2. Following a hearing, a Temporary Injunction prohibiting Baker from violating all of the restrictive covenants in his January 3, 2014 Employee Restrictions and Proprietary Information Agreement, including its nondisclosure clause, noncompetition clause and nonsolicitation clauses pertaining to, *inter alia*, clients, customers and employees.

## I.    INTRODUCTION

Until his sudden resignation on July 5, 2017, Baker held the position of Vice President of Segment Sales at Advantage Waypoint. Baker worked for Advantage Waypoint for more than

1

five years, based in his home office residence in Rutherford County, Tennessee. He was well compensated (earning, at the time of his resignation, more than $225,000 per year) and entrusted with Advantage Waypoint's most confidential information and top-level strategy, including ongoing direct communications with the President of the company regarding how to market Advantage Waypoint to clients and how to increase sales on behalf of clients.

Because Baker held such a position of responsibility and trust, on January 3, 2014, as an express condition of his promotion to Vice President of Segment Sales, Baker executed an Employee Restrictions and Proprietary Information Agreement (the "2014 Agreement"), whereby Baker agreed that he would not work for a direct competitor of Advantage Waypoint, or solicit its clients, prospective clients, or employees for eighteen (18) months after his employment ended. (*See* Exhibit 1 to Advantage Waypoint's Verified Complaint at §§ 5, 6).

But on July 5, 2017, despite these valid restrictive covenants, Baker abruptly terminated his employment without notice and informed Advantage Waypoint that he was going to take a position with direct competitor The Core Group, Inc. ("Core"). Baker was immediately reminded (that same day) of his restrictive covenants. Nevertheless, he proceeded to take a virtually identical position at Core in willful violation of this noncompetition clause and then, without pause, to directly solicit Advantage Waypoint's clients and customers on behalf of Core.

Baker specifically told Advantage Waypoint employees that (1) he would be operating in virtually the identical capacity at Core; and (2) accepted the Core position because he would be paid more and receive equity. Advantage Waypoint has reason to believe that Baker was actively strategizing with Core prior to his departure and provided Core with confidential information while he was still an executive at Advantage Waypoint.

LEGAL_US_W # 90630502.3

And, in fact, it is Advantage Waypoint's understanding that Core hired Baker to replicate Advantage Waypoint's segment sales model at Core, for the specific purpose of competing with Advantage Waypoint and soliciting Advantage Waypoint's clients, prospective clients, and customers in violation of the 2014 Agreement, and at the very time Advantage Waypoint is actively competing with Core for large contracts with major clients, representing tens of millions of dollars in business.

Baker's threat to Advantage Waypoint is both serious and urgent. Given the state of Advantage Waypoint's active competition against Core in the marketplace, combined with Baker's extensive knowledge of Advantage Waypoint's business strategies, marketing tools, and proprietary software, as well as his client relationships, Advantage Waypoint stands to potentially lose tens of millions of dollars in business in the near term, along with incalculable future losses due to Baker's breach of his restrictive covenants. The circumstances of Baker's exit from Advantage Waypoint make his motivations clear: he will use his substantial knowledge of Advantage Waypoint's confidential information and business strategies to give Core an unfair business advantage in contract negotiations and sales at Advantage Waypoint's expense.

To prevent immediate harm pending a hearing on the motion Advantage Waypoint therefore seeks a Temporary Restraining Order prohibiting Baker from soliciting its clients and customers. Following a hearing, Advantage Waypoint seeks a Temporary Injunction until such time as the matter is tried prohibiting Baker from violating any of the restrictive covenants in the 2014 Agreement.

3

## II. FACTUAL BACKGROUND[1]

### A. Advantage Waypoint Contracts with Large Food Production Companies (Clients) to Sell Their Products to Food Service Providers (Customers).

Advantage Waypoint is a foodservice sales and marketing agency that acts on behalf of large food production companies (clients) to market and sell their products to food service providers, such as restaurants, hotels, schools, and hospitals (customers). To distinguish its business from its competitors, among other things, Advantage Waypoint: (1) utilizes a "segment model," whereby its sales employees specifically target certain assigned business segments such as primary schools, hospitals, or midsize restaurant chains; and (2) optimizes its sales and marketing efforts by relying upon proprietary analyses of market demand and trends using sophisticated data mining.

Advantage Waypoint's work involves the use of highly confidential business information that Baker had knowledge of, and access to, including, but not limited to: (1) lists of its clients and customers, including the decisionmakers at those entities; (2) clients' confidential information regarding their products; (3) marketing strategies with respect to current and prospective "pipeline" clients; (4) strategies for selling the clients' products to customers, including plans to increase its market share using the segment model; (5) confidential contract pricing information that is individually negotiated with clients; (6) data analytics regarding market demand and trends, including the company's Food IQ analyses; and (7) information regarding Advantage Waypoint's employees, including compensation and performance.

Maintaining the confidentiality of Advantage Waypoint's trade secrets and other confidential and proprietary information is crucial for Advantage Waypoint to compete in the marketplace. Consequently, Advantage Waypoint has taken reasonable and extensive efforts to

---

[1] This factual summary is taken from the Verified Complaint filed herewith.

4

maintain the secrecy of its trade secrets, and confidential business, proprietary, and technical information including, but not limited to, (a) restricting access to its facilities; (b) requiring its employees to enter into contracts to prevent disclosure of confidential information; (c) requiring key employees to enter into contracts to prevent unfair competition against Advantage Waypoint and its clients; (d) requiring confidentiality provisions in contracts with clients, customers, consultants, vendors, and other third parties; and (e) establishing other procedures and protocols, as necessary, to protect confidential business, trade secret, proprietary, and technical information.

### B. Baker, One of Advantage Waypoint's Highest Ranking Sales Employees, Led the Segment Sales Division.

Baker was initially hired by Advantage Waypoint in April 2012 as National Director of K-12 Programs (one of Advantage Waypoint's most important segments). In January 2014, Baker was promoted to Vice President of Segment Sales, a highly compensated position he held for more than three and a half years before his sudden resignation. As Vice President of Segment Sales, Baker reported directly to Chuck Mascari, Jr., Advantage Waypoint's Executive Vice President of Foodservice Sales. Mascari in turn reports directly to Don Davis, President of Advantage Waypoint.

In his position as Vice President of Segment Sales, Baker worked out of his home in Rutherford County, Tennessee, but travelled substantially throughout the United States. Baker directly supervised eight (8) individuals and indirectly supervised approximately 150 individuals in his division. He was provided with information regarding those individuals' compensation, skills and job performance and therefore is uniquely positioned to solicit those employees on behalf of Core, using that confidential information.

Additionally, Baker was intimately familiar with Advantage Waypoint's confidential and proprietary information and trade secrets. As Vice President of Segment Sales, Baker was given

5

access to highly sensitive and confidential information, including but not limited to the company's marketing strategies and pricing information regarding major national contracts for which Advantage Waypoint is in active competition with Core. Indeed, as Vice President of Segment Sales, Baker was specifically assigned to lead the strategy regarding one such national client, and had repeated discussions with the President of Advantage Waypoint about how best to retain the client's business and increase Advantage Waypoint's market share. Baker dealt directly with significant clients, including: Tyson Foods, Land O'Lakes, High Liner Foods, Smucker's, French's Food Company, LLC, Ventura Foods LLC, Hershey Company, Barilla America Inc., Flowers Foods Specialty Group, Mars Food, Ajinomoto Windsor, Inc., Butterball LLC, Dr Pepper Snapple Group, Nestle, Chobani, and Super Bakery.

### C. Baker Agreed Not to Compete, Solicit Customers or Solicit Employees For a Reasonable Period of Time Following Termination of His Employment.

Because Baker would be provided with access to high-level confidential information, as an express condition of his promotion to Vice President of Segment Sales and continued employment, Baker knowingly and voluntarily entered into the 2014 Agreement. (*See* Exhibit 1 to Advantage Waypoint's Verified Complaint).

Among other things, the 2014 Agreement was specifically designed to protect against: (1) unfair competition by accepting employment with a direct competitor; (2) solicitation of Advantage Waypoint's actual and prospective clients and customers; and (3) solicitation of Advantage Waypoint's employees.

Section 5 of Baker's Employee Restrictions and Proprietary Information Agreement states, in pertinent part:

> Non-Compete. I agree that while employed by the Company and for a period of 18 months following the termination of my employment, I will not directly or indirectly, either for myself or any other person or entity, conduct, operate, carry

6

out or engage in, or own any interest in, perform any services for, participate in or be connected with any Person other than the Company that conducts, operates, carries out or engages in, or receives any economic benefit in connection with, any business that is or may reasonably be considered to be competitive with the Business (including any expansions or extensions thereof which have either taken place prior to such termination or which were contemplated at the time of termination), within the Geographic Area.

(*Id.*)

"Business" is defined in the 2014 Agreement as, "the food service brokerage business and business of providing sales, marketing, merchandising, event promotions and demonstrating services to manufacturers, suppliers, distributors, retailers, operators and producers of food and consumer packaged goods." (*Id.* at §1.) The "Geographic Area" is defined as the United States and Canada. (*Id.*)

Section 6 of the 2014 Agreement states, in pertinent part:

Non-Solicitation. I agree that while employed by the Company and for a period of 18 months following the termination of my employment, I will not directly or indirectly, either for myself or any other person or entity, do any of the following:

(a) Clients and Customers. I will not, within the Geographic Area, (A) solicit or induce any client, customer or supplier of the Company to reduce or refrain from doing any business with the Company, (B) damage any relationship between the Company and any of its clients, customers or suppliers (or any Person in respect of which I am actually aware that the Company has approached or has made significant plans to approach as a prospective client, customer or supplier within 6 months prior thereto) or (C) aid Persons involved in any such acts.

(b) Employees. I will not solicit, induce or attempt to induce any individual who is or was an officer, employee, or consultant of the Company to leave the Company, or in any way interfere with the relationship between the Company and such individual; provided, that this clause shall not apply to any individual whose employment or engagement with the Company has been terminated (either voluntarily or involuntarily) for a period of one year or longer prior to such solicitation.

(*Id.*)

LEGAL_US_W # 90630502.3

Section 11(a) of the 2014 Agreement states that it is "governed by the laws of the State of Delaware, without regard to any conflicts of law principles thereof that would call for the application of the laws of any other jurisdiction." (*Id.*)

The restrictive covenants contained in the 2014 Agreement are reasonably necessary to protect Advantage Waypoint's goodwill and legitimate business interests, including, but not limited to, Advantage Waypoint's confidential and proprietary business information not publicly known, and Advantage Waypoint's customer and employee relationships. The covenants are also reasonably limited as to time, geography and scope. Advantage Waypoint conducts business and has clients across the United States, and the geographic limit is tied to Baker's scope of activity since he worked intimately with Advantage Waypoint's clients across the United States and, indeed, directed a large sales force with nationwide scope.

### D. Baker Resigned From Employment with Advantage Waypoint and Began His New Employment with Core, Flagrantly Disregarding His Non-Compete Obligations.

On July 5, 2017, Baker informed Mascari that he was resigning his employment to work for Core, effective immediately, despite the fact that accepting such employment directly violated the restrictive covenants in the 2014 Agreement. Baker was reminded of his legal obligations that same day. But he elected to wholly and wantonly disregard them, and proceeded with his plan to compete with Advantage Waypoint, informing various Advantage Waypoint employees that he resigned his employment because Core was going to pay him more and give him equity.

Indeed, it is evident that Baker was recruited by Core in order to perform virtually identical duties to those he performed at Advantage Waypoint—namely, to implement and manage segment sales divisions at Core (a business strategy previously unique to Advantage

8

Waypoint), and to solicit food production companies to enter sales contracts with Core. Not surprisingly, Baker began soliciting Advantage Waypoint's clients and prospective clients immediately. *Just four days* after his resignation, Baker attended a trade show in Atlanta, Georgia to solicit clients and customers, including Advantage Waypoint's clients and customers, on behalf of Core. Advantage Waypoint understands that Core has already been marketing their "new" segment strategy as a selling point—the same model that Baker was in charge of at Advantage Waypoint—and that Baker would be leading it. Given that Baker is already performing his duties for Core and competing with Advantage Waypoint for its current and prospective clients, he is in patent and ongoing breach of the 2014 Agreement.

The substantial detriment to Advantage Waypoint due to Baker's contractual violations is immediate: Baker worked directly with the President of Advantage Waypoint to negotiate the contract of a major national client, for which Core is actively competing against Advantage Waypoint. Baker's extensive knowledge of Advantage Waypoint's confidential information puts Advantage Waypoint at a competitive disadvantage in its current negotiations and threatens to potentially cost Advantage Waypoint tens of millions of dollars in the very near future.

In the longer term, Advantage Waypoint faces incalculable future losses due to Baker's breach of the restrictive covenants. Baker is now in a position to continually use Advantage Waypoint's confidential business and technical information, trade secrets, and proprietary information on behalf of a direct competitor. This puts Advantage Waypoint at a gross and fundamentally unfair disadvantage as it attempts to compete with an entity that essentially has its playbook. Moreover, Baker will be in charge of staffing the new segment sales division at Core. Considering he had access to highly confidential employee information, including information

9

regarding employee performance and compensation, it is highly likely that Baker is attempting, or will soon attempt, to solicit Advantage Waypoint's highest performing sales employees.

## III.  ADVANTAGE WAYPOINT IS ENTITLED TO TEMPORARY INJUNCTIVE RELIEF

Advantage Waypoint seeks injunctive relief against Baker arising from his continued actions in violation of the restrictive covenants in the 2014 Agreement.  A party can obtain a temporary restraining order during the pendency of litigation if:

> It is clearly shown by verified complaint, or affidavit that the applicant's rights are being or will be violated by the adverse party and the applicant will suffer immediate and irreparable injury, loss or damage before notice can be served and a hearing had thereon.

Tenn. R. Civ. 65.03.  Advantage Waypoint has contemporaneously filed a Verified Complaint that demonstrates Baker has violated Advantage Waypoint's contractual rights, and that Advantage Waypoint will suffer immediate and irreparable injury as a direct result.

The Tennessee Court of Appeals has adopted a four factor test in determining whether temporary injunctive relief is appropriate: "(1) the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on the defendant; (3) the probability that plaintiff [would] succeed on the merits; and (4) the public interest." *South Cent. Tenn. R.R. Auth. v. Harakas*, 44 S.W. 3d 912, 919 n. 6 (Tenn. Ct. App. 2000).  As set forth below, Advantage Waypoint seeks a temporary restraining order and temporary injunctive relief against Baker arising out of its actions for breach of contract.

### A.  Without Injunctive Relief, Irreparable Harm to Advantage Waypoint is a Certainty.

On an ongoing basis, Baker is harming Advantage Waypoint by using its confidential information, and relationships it invested in him building, to compete with it.  This harm is

LEGAL_US_W # 90630502.3

irreparable because it includes incalculable damage to client and customer relationships. For this reason it is clear that, "'the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer.'" *FirstEnergy Solutions Corp. v. Flerick*, 521 F.App'x 521, 529 (6th Cir. 2013) (affirming enforcement of restrictive covenant under Ohio law) (citations omitted). This is because, *inter alia*, the "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id.* Indeed the damage occasioned by Baker's use of Advantage Waypoint's confidential information to directly compete against it cannot be easily undone, nor can it be readily quantified.

### B. The Gravity of the Harm to Advantage Waypoint Far Outweighs Any Injury to Baker.

The irreparable harm to Advantage Waypoint in Baker continuing to attempt to materially damage its business far outweighs any temporary injury to Baker occasioned by him honoring his contractual promises and temporarily finding work in a noncompetitive industry. The potential damage to Advantage Waypoint's longstanding relationships with national clients and customers dwarfs any short-lived inconvenience to Baker seeking other employment for 18 months (a requirement of his own making).

### C. Advantage Waypoint Will Prevail on the Merits.

Advantage Waypoint will succeed on its breach of contract claim. It specifically seeks enforcement of the noncompetition and nonsolicitation provisions in the 2014 Agreement. Because the 2014 Agreement has a Delaware choice-of-law provision, Advantage Waypoint addresses the breach of contract claim under both Delaware and Tennessee law. The result is the same.

LEGAL_US_W # 90630502.3

To establish a breach of contract claim under Delaware law, a plaintiff must demonstrate: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). Tennessee similarly requires (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by breach of the contract. *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006).

Baker agreed to the terms of the 2014 Agreement knowingly and voluntarily, and for good and valuable consideration, including his promotion to Vice President of Segment Sales, and receipt of Advantage Waypoint's confidential information. Advantage Waypoint performed under the contract. Baker's conduct constitutes a willful breach of the 2014 Agreement, which has caused, and will continue to cause, Advantage Waypoint immediate and irreparable injury unless enjoined.

1. **The Restrictive Covenants in the 2014 Agreement are Valid and Binding.**

   a. **The Restrictive Covenants are Fully Enforceable Under Delaware Law.**

Under Delaware law, a restrictive covenant will be upheld if it: (1) meets general contract law requirements; (2) is reasonable geographically and temporally; (3) advances a legitimate economic interest of the enforcing party; and (4) survives a balance of the equities. *See Am. Homepatient, Inc. v. Collier*, 2006 WL 1134170, at *2 (Del. Ch. Apr. 19, 2006).

   i. **All Contractual Requirements are Met.**

Baker voluntarily entered into the 2014 Agreement in exchange for valuable consideration, including a substantial promotion to Vice President of Segment Sales and continued employment and he is therefore bound by the 2014 Agreement's restrictive covenants.

*Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 466-67 (Del. Ch. 1977) ("a beneficial change in an employee's status may constitute sufficient consideration to support a restrictive covenant agreed to after the initial taking of employment").

    ii.  **The Restrictive Covenants are Reasonable Geographically and Temporally.**

  Sections 5 and 6 of the 2014 Agreement prevent Baker from working for a direct competitor within the United States[2] and from soliciting Advantage Waypoint's clients, prospective clients, customers or employees for a period of 18 months. (*See* Exhibit 1 §§ 5, 6).

  The non-competition covenant is reasonable because it is limited to 18 months and only prohibits Baker from working for those businesses that compete with the Business (as contractually defined) of Advantage Waypoint. Delaware courts routinely enforce covenants with similar temporal and geographic scopes. *See, e.g., TP Group-CI, Inc. v. Vetecnik*, 2016 WL 5864030 (D. Del. Oct. 6, 2016) ("Delaware courts have routinely found restrictive covenants with a duration of two years to be reasonable in duration."); *Research & Trading Corp. v. Powell*, 468 A.2d 1301 (Del. Ch. 1983) (enforcing a nationwide, two year covenant not to sell products competing with the former employer's product lines); *CIENA Corp. v. Farrard*, 203 F.3d 312 (4th Cir. 2000) (upholding enforcement of a one year nationwide non-competition agreement under Delaware law); *Faw, Casson & Co.*, 375 A.2d 463 (upholding a two year non-competition agreement); *O'Leary v. Telecom Res. Servs, LLC*, 2011 WL 379300, at *5 (Del. Super. Ct. Jan. 14, 2011) ("[a] national scope can be particularly necessary in today's world where so many businesses operate on a national or even global scale").[3]

---

[2] Advantage Waypoint does not seek to enforce the noncompetition provision as applied to Canada.

[3] Assuming, *arguendo*, that the noncompetition or nonsolicitation provisions are deemed overbroad in any respect, the court should modify the restrictive covenants and enforce them as

LEGAL_US_W # 90630502.3

### iii. The Restrictive Covenants Advance Advantage Waypoint's Legitimate Economic Interests.

Advantage Waypoint has legitimate economic interests in its confidential proprietary information, as well as its valuable relationships with its clients, customers, and employees; it provided Baker with high level access to its confidential information and relationships because he executed the 2014 Agreement, and agreed to the reasonable restrictions. And then, working for years as a Vice President, Baker developed and maintained relationships with Advantage Waypoint's clients and customers, using the highest level of sensitive confidential information, trade secrets, customer lists, pricing information, market analyses and trends, strategy, and confidential employee information. Advantage Waypoint has heavily invested in these legitimate economic interests for years.

And thus it is fitting that they are textbook examples of interests protectable by restrictive covenants. *See Sensus USA, Inc. v. Franklin*, 2016 WL 1466488, at *7 (D. Del. Apr. 14, 2016) ("legitimate interests include preserving employer goodwill and protecting an employer's confidential information, including customer lists, pricing, trade secrets and proprietary information."); *Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. Ch. 1969)

---

modified. This is permitted under both Delaware and Tennessee law. *See, e.g., Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886 (Del. Ch. Apr. 15, 2004) (reducing temporal restriction to two years and enforcing the non-competition agreement as modified); *Knowles-Zeswitz Music, Inc.*, 260 A.2d 171, (Del. Ch. 1969) (utilizing a reasonable alteration approach and modifying a geographic limitation that the court deemed overly broad under the circumstances); *Central Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 37 (Tenn. 1984) ("unless the circumstances individuate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent that they are reasonably necessary to protect the employer's interest 'without imposing undue hardship on the employee when the public interest is not adversely affected'") (citations omitted); *Money & Tax Help, Inc. v. Moody*, 180 S.W.3d 561 (Tenn. Ct. App. 2005) (modifying a non-compete agreement to only apply to clients who were on the plaintiff's business list at the time the defendant ceased working for the plaintiff); *Outfitters Satellite, Inc. v. CIMA, Inc.*, 2005 Tenn. App. LEXIS 86 (modifying a non-compete agreement to apply only to the United States rather than North America).

14

(enforcing a non-compete agreement due to the former employee's valuable relationships with his former customers); *Original Vincent & Joseph, Inc. v. Schiavone*, 134 A.2d 843, 846 (Del. Ch. 1957) (providing protection for business information, including customer lists).

### iv. The Equities Heavily Favor Advantage Waypoint.

The balance of equities weighs heavily in Advantage Waypoint's favor. Baker was a well-compensated high-ranking executive who unilaterally chose to wantonly violate his restrictive covenants by performing virtually the same job for a direct competitor while armed with Advantage Waypoint's high-level strategy, putting himself in the perfect position to materially harm Advantage Waypoint. If he wanted to seek other employment, he was – and is – contractually obligated to find work in another industry for 18 months. *See Sensus USA, Inc.*, 2016 WL 1466488, at \*8 (balance of equities favored enforcement of restrictive covenants because the defendant could "accept employment in a non-competitive industry or in a location which does not violate the agreement" while the employer "may suffer greatly absent enforcement of these provisions" given that the defendant had "already indicated his intent to work for … competitors and his knowledge of [the plaintiff's] business practices make him uniquely positioned to cause hardship to the company"). Moreover, this is a situation that Baker knowingly manufactured. He cannot now claim that it is inequitable to enforce restrictive covenants that he entered into willingly and of which he was fully aware.

### b. Tennessee Law Compels the Same Result.

Applying Tennessee law, the result is the same. As with Delaware, Tennessee courts enforce restrictive covenants in employment contracts if "they are reasonable under the circumstances," including "territorial and time limitations." *See Central Adjustment Bureau v. Ingram*, 678 S.W.2d 28, 32-33 (Tenn. 1984).

15

As with Delaware, Tennessee courts routinely enforce restrictive covenants with similar territorial provisions (United States) and temporal limitations more extensive than those here. *See, e.g., Ramsey v. Mutual Supply Co.*, 427 S.W.2d 849 (Tenn. Ct. App. 1968) (upholding a five year noncompete provision); *Harvey v. Appalachian Claims Service, Inc.*, 1995 WL 140746 (Tenn. Ct. App. 1995) (finding that a three year limitation was not unreasonable); *Dabora Inc. v. Kline*, 884 S.W.2d 475 (Tenn. Ct. App. 1994) (upholding a three year nationwide restriction on accepting employment with any business in competition with the plaintiff); *Outfitters Satellite, Inc. v. CIMA, Inc.*, 2005 Tenn.App. LEXIS 86 (Tenn. Ct. App. Nov. 4, 2004) (enforcing, as modified, a one year nationwide non-competition agreement); *William B. Tanner Co., Inc. v. Taylor*, 530 S.W.2d 517 (Tenn. Ct. App. 1974) (finding that a sales manager of a media firm's two year non-competition agreement covering the United States, Canada, and Mexico was not unreasonable).

Under Tennessee law, courts determine the reasonableness of noncompete provisions in the context of the circumstances of the case. Relevant factors include: "the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to the public interest." *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966).

As discussed above, the 2014 Agreement was supported by adequate consideration—a substantial promotion and continued employment. *See Flying Colors of Nashville, Inc. v. Keyt*, 1991 WL 153198 at *4 (Tenn. Ct. App. Aug. 14, 1991) (finding that two years of continued employment following execution of the non-compete agreement was sufficient consideration).

LEGAL_US_W # 90630502.3

And the threatened danger to Advantage Waypoint if Baker is permitted to continue to violate his restrictive covenants is immense, while any hardship imposed on Baker is comparatively minimal. Further, and again, Baker must not be heard to complain of economic hardships caused by his own willful breach of valid contractual obligations. *See Dabora, Inc.*, 884 S.W.2d at 479 (upholding a covenant not to compete where former employee voluntarily and knowingly entered the agreement, even though it imposed a financial hardship and there may not have been any comparable job opportunities where the former employee lived).

Nor are the restrictive covenants at issue inimical to the public interest. They were knowingly and voluntarily agreed to in order to protect the legitimate business interests of Advantage Waypoint and to allow it to compete fairly in the marketplace. *See Smith & Nephew, Inc. v. Northwest Ortho. Plus, Inc.*, 2012 U.S. Dist. LEXIS 178715, at *38 (W.D. Tenn. Dec. 18, 2012) ("Tennessee . . . recognize[s] a public interest in enforcing contracts as written").

### 2. Baker Has Breached His Promises in the Restrictive Covenants Agreements, Injuring Advantage Waypoint.

Baker has willfully breached his contractual obligations despite having enjoyed the substantial benefits associated with his entering into the 2014 Agreement. Immediately after resigning, Baker began working for a competitor in violation of Section 5 of the 2014 Agreement, and thereafter began openly and actively soliciting Advantage Waypoint's clients and customers in violation of Section 6 of the 2014 Agreement. He will continue to do so absent injunctive relief from this court because *that is his job at Core*. Baker was hired so that he could perform activities that directly and unequivocally breach the 2014 Agreement on behalf of Advantage Waypoint's competitor. His contractual violation could not be more plain.

Moreover, Baker had close internal relationship with numerous Advantage Waypoint sales employees about whom he had confidential performance and compensation information,

17

and now he has been asked to develop a sales segment team at Core. Considering his now well-established disregard for his obligations to Advantage Waypoint, it is highly likely that Baker has already solicited (or will soon solicit) Advantage Waypoint's high-performing employees in violation of the terms of Section 6 of the 2014 Agreement.

It is equally evident that Advantage Waypoint will suffer immediate and irreparable harm if such breaches are allowed to continue.

### D. The Public Interest Weighs in Favor of Enforcing Valid Contracts and Prohibiting Unfair Competition.

The public interest "'is always served in the enforcement of valid restrictive covenants contained in lawful contracts.'" *FirstEnergy*, 521 F.App'x at 529 (citations omitted). In order to conduct business and entrust high-ranking executives with confidential information, employers must be assured that courts will enforce valid and reasonable protections against unfair competition. Such must be the case here.

## IV    CONCLUSION

Advantage Waypoint meets every requirement for a temporary restraining order to enjoin Baker from soliciting its current clients and customers. Upon a hearing for injunctive relief, Advantage Waypoint requests that the Court order Baker to honor the full terms and conditions of the 2014 Agreement, and to cease from unfairly competing with Advantage Waypoint and soliciting its clients, customers, and employees for the 18 month period.

For the foregoing reasons, Advantage Waypoint respectfully requests that the court grant its Motion for a Temporary Restraining Order, and after a hearing, its Motion for a Temporary Injunction, and to immediately enjoin Baker as set forth in the Proposed Temporary Restraining Order filed herewith.

LEGAL_US_W # 90630502.3

Dated this 14th day of July, 2017.

Respectfully submitted,

William S. Rutchow (BPR #017183)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, Tennessee 37219
(615) 254-1900
(615) 254-1908 (*Facsimile*)

**ATTORNEYS FOR PLAINTIFF
ADVANTAGE WAYPOINT LLC**

LEGAL_US_W # 90630502.3

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th of July 2017 a true and correct copy of the foregoing was served upon the following:

Michael Baker
2412 Delano Ct
Murfreesboro, TN 37130
4thbakerboy@att.com
4thbakerboy@att.net

*via hand delivery/email.*

LEGAL_US_W # 90630502.3

IN THE CHANCERY COURT OF RUTHERFORD COUNTY, TENNESSEE
FOR THE SIXTEENTH JUDICIAL DISTRICT AT MURFREESBORO

ADVANTAGE WAYPOINT LLC,          )
                                 )
Plaintiff,                       )
                                 )
v.                               )      Civil Action No.
                                 )
MICHAEL BAKER,                   )
                                 )
Defendant.                       )

## NOTICE

Pursuant to Local Rule 5.03 and Rule 65.03 of the Tennessee Rules of Civil Procedure, Plaintiff's counsel certifies that he is unaware of any counsel that represents Defendant Michael Baker and thus notice to opposing counsel could not be given. Plaintiff's counsel did provide notice on July 14, 2017 at approximately _11_ a.m. via email to Mr. Baker. The temporary restraining order should immediately enter without further notice to Mr. Baker for the reasons set forth in the Verified Complaint. Such an order is necessary to prevent immediate and irreparable harm to Plaintiff's relationships with its clients and customers due to Mr. Baker's ongoing breaches of his contractual obligations and unfair competition.

Dated this the 14th day of July 2017.

Respectfully submitted,

William S. Rutchow (BPR #017183)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, Tennessee 37219
(615) 254-1900
(615) 254-1908 (*Facsimile*)

**ATTORNEYS FOR PLAINTIFF
ADVANTAGE WAYPOINT LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th of July 2017 a true and correct copy of the foregoing was served upon the following:

Michael Baker
2412 Delano Ct
Murfreesboro, TN 37130
4thbakerboy@att.com
4thbakerboy@att.net

*via hand delivery/email.*

30519714.1

# IN THE CHANCERY COURT FOR RUTHERFORD COUNTY, TENNESSEE

ADVANTAGE WAYPOINT LLC
_____
PLAINTIFF(S)

vs.                                                          File No. _____

MICHAEL BAKER
_____
DEFENDANT(S)

## RESTRAINING BOND/INJUNCTION BOND

We, the restraining parties/principals, and our surety (list names here):

Advantage Waypoint LLC and Ogletree, Deakins, Nash, Smoak and Stewart, PC

are held and firmly bound unto (list all parties restrained) Michael Baker

in the sum of (amount determined by Court) _____ Dollars, for which payment, we bind

ourselves, our heirs, our executors or administrators, jointly and severally.s

**The Condition of the above Obligation is such** that the above named principals prayed for and obtained from

Chancellor _____ a **Restraining Order or Injunction** against the above named parties all

is set out in the sworn pleading and order, which are here referred to and made a part of this Bond.

Now, if the said principals/parties listed above, shall prosecute the said Restraining Order or Injunction with effect, or in case

of failure shall pay the said restrained parties listed above the amount of the judgment at law with interest, damages, and costs, and all

such costs and damages as may be sustained by the wrongful suing out of said Restraining Order or Injunction, and shall abide by and

perform such orders and decrees as the Court may make in this cause, and shall pay such costs and damages as the Court may order,

then the above obligation to be void; otherwise to remain in full force and effect.

Principal: _Advantage Waypoint, LLC_          Surety: _Ogletree, Deakins, Nash, Smoak + Stewart, P.C._

_13521 Prestige Place_                                  _401 Commerce St., Suite 1200_

_Tampa, FL 33635_                                         _Nashville, TN 37219_

Signed and dated this _14th_ day of _July_ _____, 2017.

LEGAL_US_W # 90652887.1

## State of Tennessee, Rutherford County

## CHANCERY COURT

### AT MURFREESBORO, TENN.

Advantage Waypoint LLC

_____
PLAINTIFF

VS.

Michael Baker

_____
DEFENDANT

2412 Delano Ct

_____
ADDRESS

Murfreesboro, Tennessee 37130

CITY     STATE   ZIP

No. _____

## RESTRAINING ORDER

TO THE SHERIFF OF RUTHERFORD COUNTY, GREETINGS:

To M I C H A E L  B A K E R  and to his officers, agents, and attorneys, and each and every one of them, Greetings:
WHEREAS, it having been represented to me, the Chancery Court at Murfreesboro, Tennessee, in a certain suit between ADVANTAGE WAYPOINT LLC, plaintiff and MICHAEL BAKER, defendant on the part of the said complainant by affidavit that the plaintiff will suffer immediate and irreparable injury, loss or damage before notice can be served

and a hearing held thereon, this restraining order is hereby issued restraining MICHAEL BAKER from specifically:

Within the United States, (A) soliciting or inducing any client, customer or supplier of Advantage Waypoint LLC to reduce or refrain from doing any business with Advantage Waypoint LLC; (B) damaging any relationship between Advantage Waypoint LLC and any of its clients, customers or suppliers; or (C) aiding persons or entities involved in any such acts.

Therefore, in consideration of the premises aforesaid, I do strictly restrain and command you, the said parties above named, and all and every person before mentioned, under penalty presented by law, of your and each of your goods, lands, and tenements to be levied to our use, that you and each of do absolutely desist from doing, or attempting to do, any of the acts hereinbefore specified as restrained until hearing of this cause in our said Chancery Court.

ENTER this_____day of July, 2017 at_____O'Clock M.

_____
CHANCELLOR/JUDGE

| NOTICE OF HEARING | |
| --- | --- |
| A HEARING ON THE TEMPORARY RESTRAINING ORDER HAS BEEN SET FOR THE_____DAY OF_____, 20_____ | ISSUE _____, 2017, at _____O'Clock ——M. |
| AT------- M. Rm#-------<br>Judicial Bldg.  Court House  Judicial Annex | JOHN A.W. BRATCHER, CLERK<br><br>By_____<br>Deputy Clerk |

The within Restraining Order came to hand the same day as issued and executed by reading to and leaving a copy with same named defendant, namely MICHAEL BAKER.

This_____day of July, 2017, at_____O'Clock  M.

_____
Sheriff

LEGAL_US_W # 90646484.1