# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ADVANTAGE WAYPOINT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-cv-01053 |
| ) | CHIEF JUDGE CRENSHAW |
| MICHAEL BAKER, ) | |
| ) | |
| Defendant/Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DON DAVIS, ) | |
| ) | |
| Third Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The central question in this case is whether Michael Baker violated his non-compete agreement with Advantage Waypoint, LLC, when he agreed to work for Core, a direct competitor. (Doc. No. 1-1.) The Court has diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. No. 1.) Before the Court are Advantage Waypoint's Motions for a Preliminary Injunction (Doc. No. 6) and to Compel Arbitration (Doc. No. 48), and Don Davis' Unopposed Motion to Compel Arbitration (Doc. No. 73). For the following reasons, all pending motions are granted.

I. PROCEDURAL HISTORY

On July 18, 2017, Baker removed this case from the Rutherford County, Tennessee, Chancery Court. (Doc. No. 1.) Three days later, Advantage Waypoint filed a Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. No. 6.) On July 24, 2017, the Court set this matter for a hearing and ordered the parties to maintain the status quo until the Court

decided the motion for a preliminary injunction. (Doc. No. 13.) The Court held a preliminary injunction hearing, and at the hearing asked the parties to file supplemental briefs. (Doc. No. 51.)

Prior to filing the supplemental briefs (Doc. Nos. 63-64), on August 29, 2017, Advantage Waypoint filed a Motion to Compel Arbitration, arguing that the parties signed a valid and enforceable arbitration agreement. (Doc. No. 48.) Advantage Waypoint asks the Court to grant preliminary injunctive relief, then stay the case pending arbitration. (Doc. No. 49.) Baker opposes arbitration (Doc. No. 53), and the motion for preliminary injunctive relief. Davis also filed a Motion to Compel Arbitration after being served as a third-party defendant. (Doc. No. 73.)

## II. ARBITRATION

On March 14, 2016, Baker and Advantage Waypoint agreed to "resolve in binding arbitration all claims or controversies . . . that the Company may have against you, or that you . . . may have against . . . (1) the Company [and] (2) its officers [or] directors . . . ." (Doc. No. 49-3 at 2.) Baker opposes arbitration because Advantage Waypoint has not met the threshold requirement of establishing an arbitration agreement, and alternatively, Advantage Waypoint waived any right to arbitration. (Doc. No. 53.) Baker did not file a specific response to Davis' Motion to Compel Arbitration, which is governed by the same arbitration agreement as Advantage Waypoint's Motion. (Doc. No. 49-3.)

Baker's argument that the arbitration agreement is inadmissible hearsay fails because the Agreement is Baker's statement—he signed it—in his individual capacity and it is being offered against him. FED. R. EVID. 801(d)(2)(A). "[U]nder the 'verbal acts' doctrine, writings and statements, such as contracts, that affect the legal rights of the parties are not" hearsay. Robertson v. U. S. Bank, N.A., 831 F.3d 757, 764 (6th Cir. 2016) (internal quotations omitted). Therefore, the arbitration agreement is enforceable if it was not waived.

2

Case 3:17-cv-01053   Document 77   Filed 01/23/18   Page 2 of 10 PageID #: 2171

Advantage Waypoint did not waive arbitration. "A party waives arbitration if it acts in a manner 'completely inconsistent with any reliance on an arbitration agreement' or delays asserting arbitration 'to such an extent that the opposing party incur[red] actual prejudice.'" Shy v. Navistar Int'l Corp., 781 F.3d 820, 827-28 (6th Cir. 2015) (quoting Hurley v. Deutsche Bank Trust Co. Ams., 610 F.3d 334, 338 (6th Cir. 2010)). While it is a close question whether Advantage Waypoint acted completely inconsistent with its intent to arbitrate by not giving notice earlier of its intent to arbitrate in the Complaint, Baker cannot show any prejudice by the two-week delay in Advantage Waypoint's notice that it intends to arbitrate (See Doc. No. 32 at 2 n.2 (first mention of the arbitration agreement)), or the one month delay in demanding arbitration (Doc. No. 49-8). Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 719-20 (6th Cir. 2012). "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." Id. (quoting Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991)).

The issue here is Baker's litigation costs, including taking depositions, attending a day-long preliminary injunction hearing in Nashville, and filing post-hearing briefs regarding certain dispositive issues. However, issues regarding a preliminary injunction are not "unnecessary" expenses because Advantage Waypoint had a right to seek preliminary relief in federal court prior to commencing the arbitration proceedings. Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1380 (6th Cir. 1995) (reversing the district court's denial of preliminary injunctive relief pending arbitration because the district court had jurisdiction to consider a preliminary injunction pending arbitration and it was appropriate to prevent irreparable harm).

While the Court allowed limited discovery prior to the preliminary injunction hearing (Doc. No. 13), certainly that discovery, the testimony at the hearing, and the research that went into the dispositive issues in the post-hearing briefs can be used in arbitration, making none of the expenses "unnecessary." Taking into account the presumption of arbitration and resolving all doubts in favor of arbitration, Glazer v. Lehman Brothers, Inc., 394 F.3d 444, 450 (6th Cir. 2005), Baker did not suffer any actual prejudice from any of Advantage Waypoint's actions in this case.

Accordingly, the Court compels arbitration on all claims in this matter.

### III. PRELIMINARY INJUNCTION

The question remains whether the Court should grant a preliminary injunction to aid the arbitration. In deciding whether to grant an injunction pending a final decision by the arbitrator, the Court must consider four factors: (1) whether the party seeking injunctive relief has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the injunction is not entered; (3) the potential harm the injunction would cause the opposing party or others; and (4) the public interest. Bays v. City of Fairborn, 668 F.3d 814, 818-19 (6th Cir. 2012); Tumblebus, Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005); see Performance Unlimited, 52 F.3d at 1381 (same factors in considering a preliminary injunction pending arbitration). "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." Ne. Oh. Coal. for Homeless and Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006); accord United States v. Contents of Accounts, 692 F.3d 601, 608 (6th Cir. 2011). The Court is "not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." Certified Restoration Dry Cleaning

Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003)).

A. UNDERLYING FACTS

The Court takes into account the entire record in finding the facts leading it to grant a preliminary injunction. In particular, the Court heard testimony from Davis, Baker, Michael Rich, Charles Mascari, and James Vaughn, as well as the declarations and affidavits that were incorporated by reference throughout the transcript. (Doc. No. 51.) Outlined below are the facts the Court found particularly persuasive and relevant to the motion for injunctive relief.

Advantage Waypoint is a sales, marketing, and insights company that refers manufacturers to clients in food service. (Doc. No. 51 at 6-7.) Advantage Waypoint hired Baker as the National Director of K-12 Programs. (Id. at 75-76.) In this capacity, Baker was the "face of the company," having a relationship with multiple clients. (Id. at 151.) Baker had access to confidential proprietary information, often from clients (id. at 80), and agreed to only use that information for company purposes. (Id. at 79 (citing Pl.'s Exs. 1-2)). He was also prohibited from sending or posting confidential information, trade secrets, or other proprietary information outside the organization. (Id. at 80.)

On January 3, 2014, Advantage Waypoint promoted Baker to Vice President of Segment Sales. (Doc. No. 51 at 83.) In order to obtain the promotion, Advantage Waypoint asked him to sign the 2014 Agreement. (Pl.'s Ex. 3.) The 2014 Agreement was drafted by the Board of Directors of Advantage, Advantage Waypoint's parent company, approved by the Board, and authorized by the Board to send to Baker. (Doc. No. 51 at 142, 151-52.) In the 2014 Agreement, Baker promised that for eighteen months after leaving Advantage Waypoint he would not work for or hold any ownership interest in any direct competitor of Advantage Waypoint, solicit Advantage Waypoint's

5

clients or customers, or solicit Advantage Waypoint's employees. (Id.) Specifically, the 2014 Agreement stated:

> I agree that while employed by the Company and for a period of 18 months following the termination of my employment, I will not . . . conduct, operate, carry out or engage in, or own any interest in, perform services for, participate or be connected with any Person other than the Company that conducts, operates, carries out or engages in, or receives any economic benefit in connection with, any business that is or may reasonably be considered to be competitive with the Business. . . within the Geographic Area.

(Doc. No. 49-2 at 4.) He also agreed that the contract would be governed by the laws of Delaware. (Id. at 5.) Baker had the opportunity to consult with counsel, and signed the agreement in his home office in Tennessee. (Doc. No. 51 at 87-88.)

On June 30, 2017, Baker accepted a position at one of Advantage Waypoint's direct competitors, Core. In doing so, he did not abide by any of the provisions of the non-compete provision of the 2014 Agreement. To protect its relationship with its clients, Advantage Waypoint seeks a preliminary injunction.

    B. APPLICATION OF THE FACTORS

The likelihood of success factor does not weigh heavily in this case, but it does tip in favor of granting the injunction. Advantage Waypoint "is not required to prove [its] case in full," but must show "more than a mere possibility of success." Certified Restoration Dry Cleaning Network, 511 F.3d at 542. Advantage Waypoint has made such a showing. First, the 2014 Agreement is likely a valid contract because Advantage Waypoint's Board approved it and authorized for it to be sent to Baker, who accepted its terms. This shows that he intended to be bound by the contract. See Moody Realty Co., Inv. v. Huestis, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007) (citing Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005)) ("[T]he signatures of parties to a written agreement are not always essential to establish a binding

6

contract. . . . The parties' actions or inactions, as well as spoken words, can establish mutual assent."). With Baker's signature and Advantage Waypoint's actions showing it intended to be bound by the 2014 Agreement, it appears that there is a valid contract.

At this stage, it also appears that either Delaware or Tennessee law applies. As stated above, the 2014 Agreement states that Delaware law applies. (Doc. No. 49-2 at 5.) There is no evidence that it was entered into in bad faith, Delaware has a material connection to the transaction because Advantage Waypoint is incorporated in Delaware, and the basis for choosing Delaware appears to be reasonable. Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (quoting Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, 131 S.W.3d 457, 474-75 (Tenn. Ct. App. 2003)). While Baker argues that the non-compete is against the "fundamental policy" of California, he does not prove that California law would "otherwise govern," so it is not likely that the arbitrator will find that California law applies. Id. Because the contract was signed by Baker in Tennessee, it appears that Tennessee law could otherwise govern the contract. Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973) (citing First Am. Nat'l Bank of Nashville v. Auto. Ins. Co., 252 F.2d 62 (6th Cir. 1958)). Accordingly, at this preliminary stage, either Delaware or Tennessee law applies.

The Court does not, however, make a final choice of law finding, as that would defeat the purpose of arbitration. See Ferguson Enters., Inc. v. Hollenkamp, No. 3:15-cv-656, 2015 WL 6126844 (W.D. Ky. Oct. 16, 2015) (holding that making a finding on the likelihood of success would "frustrate the policy of deferring to arbitration . . . where arbitration is well suited to resolve the issues between the parties."). For the purposes of this injunction, the choice between Delaware and Tennessee is not determinative because applying either Advantage Waypoint appears to be likely to succeed.

7

The irreparable harm factor weighs heavily in favor of granting Advantage Waypoint a preliminary injunction. The testimony at the hearing established that Baker had access to Advantage Waypoint's sensitive information (Doc. No. 51 at 14-16) and had close relationships with some of its top clients (Id. at 18). During his course of employment with Advantage Waypoint, Baker visited clients and obtained confidential information regarding them. (Doc. No. 51 at 96-99.) Baker was preparing an Advantage Waypoint bid to obtain a client for which Core also was bidding. (Doc. No. 51 at 21.) While at Advantage Waypoint, Baker discussed how to compete with Core with respect to certain clients. (Doc. No. 51 at 101-02.) Once at Core, there is evidence that Baker was "actively soliciting Advantage Waypoint's clients" (Doc. No. 8 at 3), and Baker even testified that he intended to provide services on behalf of Core to Advantage Waypoint clients (Doc. No. 51 at 114). Baker took his Advantage Waypoint client contacts and put them on his Core computer. (Doc. No. 51 at 115.) The weekend after Baker left Advantage Waypoint, he talked with his former clients at a conference on behalf of Core (Doc. No. 51 at 123-24), and he admitted he has since talked with other former clients on behalf of Core. (Doc. No. 51 at 124-26.) Any one of these would likely be sufficient to prove irreparable harm, and the combination is certainly "the type of irreparable harm which [Advantage Waypoint] is likely to suffer, the loss of business, is precisely the type of harm which necessitates the granting of preliminary relief pending arbitration, because the arbitration will be a meaningless or hollow formality unless the status quo is preserved pending arbitration." Performance Unlimited, 52 F.3d at 1382. This factor weighs heavily in favor of granting a preliminary injunction.

There is also no evidence that Baker will suffer any harm if a limited preliminary injunction is issued. On July 24, 2017, the Court entered an Order requiring the parties to maintain the status quo pending the resolution of the Motion for a Preliminary Injunction. (Doc. No. 13.) Baker

testified that after that Order, he stopped contacting Advantage Waypoint customers. (Doc. No. 51 at 155.) There is no evidence that Baker has been harmed by being enjoined from contacting Advantage Waypoint customers—he only alleges harm from working in the industry as a whole. (Doc. No. 63 at 16.)

Last, the public policy strongly weighs in favor of a limited, status quo injunction. The "balance of equities and consideration of the public interest" are "pertinent in assessing the propriety of any" preliminary injunctive relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 32 (2008). Generally, the public has "an interest in seeing that reasonable non-competes are enforced." Patio Enclosures, Inc. v. Herbst, 39 F. App'x 964, 970 (6th Cir. 2002). The Court also weighs the strong interest in an arbitrator making the final decision on the merits because the parties agreed to arbitration. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (noting the "federal policy favoring arbitration"). Arbitration should further "the Congressional purpose behind the Federal Arbitration Act," granting relief that could "return the parties substantially to the status quo ante" pending an arbitrator's final decision. Performance Unlimited, 52 F.3d at 1380; see Ferguson Enters., 2015 WL 6126844, at *3 (finding the public policy favoring arbitration would be frustrated by the federal court deciding the dispositive matters on a motion for a preliminary injunction). The Court is able to grant a limited injunction without prejudicing Advantage Waypoint's right to seek a more expansive preliminary injunction because the JAMS Arbitration Rules allow for a party to seek preliminary injunctive relief from the arbitrator. JAMS Rule 24(e). The public interest strongly weighs in favor of a limited preliminary injunction to aid arbitration.

IV. CONCLUSION

9

The Court previously ordered that the parties maintain the status quo. (Doc. No. 13 at 2.) "This includes, but is not limited to, precluding [Baker] from using or disclosing any confidential information from [Advantage Waypoint], speaking to any of [Advantage Waypoint's] clients (or former clients that he brought with him to [Core], destroying any information relevant to this action, and soliciting any of [Advantage Waypoint's] employees." There is no proof that this injunction has materially negatively impacted them in the five months since issued. The Court will maintain this injunction through the course of arbitration.

Advantage Waypoint's and Davis' Motions to Compel Arbitration (Doc. Nos. 48, 73) are **GRANTED**, Advantage Waypoint's Motion for a Preliminary Injunction (Doc. No. 6) is **GRANTED**, and this case is **STAYED** pending arbitration. Advantage Waypoint's Motion for Leave to file Reply (Doc. No. 70) is **GRANTED**, and Baker's Motion in Limine (Doc. No. 35) is **DENIED AS MOOT**. The Clerk is **DIRECTED** to administratively close this case, subject to either party filing a motion to reopen. The Court will enter a separate Preliminary Injunction Order.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE